```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
HAVAS WORLDWIDE NEW YORK, INC. and                                :
TD AMERITRADE SERVICES COMPANY,                                   :
INC.,                                                             :
                                                                  :
                          Plaintiffs,                             :       15-cv-5018 (KBF)
                                                                  :
              -v-                                                 :       OPINION & ORDER
                                                                  :
LIONSGATE ENTERTAINMENT INC.,                                     :
                                                                  :
                          Defendant.                              :
                                                                  :
------------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Plaintiffs, a marketing agency, Havas Worldwide New York, Inc. ("Havas"), and the marketing arm of an investment company, TD Ameritrade Services Company, Inc. ("TD Ameritrade"), bring this action under the Declaratory Judgment Act ("DJA") against defendant Lionsgate Entertainment Inc. ("Lionsgate"), an entertainment company that owns the rights to the 1987 film *Dirty Dancing*. At issue is whether portions of an advertising campaign contained images and language that infringed defendant's rights under trademark law and the Lanham Act. Before this Court is defendant's motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) or in the alternative, to transfer venue to the Central District of California under 28 U.S.C. § 1404(a). For the following reasons, defendant's motion to transfer is GRANTED. The motion to dismiss on other substantive grounds is DENIED as moot.

I.    BACKGROUND

In 2014, plaintiff Havas created an advertising campaign for defendant TD Ameritrade Services. It used phrases such as "Nobody puts your old 401k in a corner" and "Take that baby and roll it over to an IRA." (Amended Complaint at ¶ 10, 12, 14.) The advertising campaign also included images of a man lifting a piggy bank over his head. (Id. at ¶ 15.) The campaign aired from October 2014 until April 2015. (Id. at ¶ 12.)

Defendant Lionsgate owns the 1987 motion picture *Dirty Dancing*. (Id. at ¶ 13.) According to defendant, plaintiffs' advertising campaign exploits a famous line from *Dirty Dancing*, "nobody puts Baby in a corner" as well as a famous scene in the film in which the main male character lifts the main female character over his head in a dance move. (Id.) In April 2015, counsel for defendant Lionsgate issued two letters to plaintiffs, notifying them that the advertising campaign was an unauthorized use that "constitutes trademark infringement, unfair competition, false association, and dilution." (Walters Decl. Exs. E, H.)

Defendant's two initial letters, one dated April 2, 2010 and the other April 15, 2015, requested present and future cessation of all reference to the phrase "Nobody puts baby in a corner," and a $1,000,000 fee for prior use. (Walters Decl. Exs. E, H.) The letters gave plaintiffs one week to respond, after which "we will advise Lionsgate to seek all remedies available to it for your unlawful acts." Plaintiffs formally rejected the licensing fee demand in an April 21, 2015 letter. (Walters Decl. Ex. I.)

On June 3, 2015, defendant Lionsgate responded to plaintiffs, outlining its rights under the Lanham Act and California unfair competition law.  Lionsgate stated that it would "prefer to resolve these issues amicably . . . . To that end, we are prepared to negotiate a reasonable license fee."  It stated that a "reasonable license fee" is a requirement of settlement, and that "[i]f pressed, we are prepared to resolve these issues through litigation, and we will pursue our claims before the U.S. District Court for the Central District of California, where Lionsgate maintains its principal place of business."  (Walters Decl. Ex. J.)

On June 8, 2015, plaintiffs made a settlement offer.  The parties agreed to refrain from filing lawsuits before the settlement was being considered.  (Walters Decl. Ex. K.)  On June 18, 2015, Lionsgate rejected plaintiffs' offer, and counteroffered.  (Walters Decl. Ex. L.)  In a June 26, 2015 email to defendant's counsel, plaintiffs formally rejected the June 18 settlement counteroffer and informed defendant that, "Since you have repeatedly threatened litigation if your demands were not met, we have this afternoon filed a complaint for declaratory judgment in U.S. District Court for the Southern District of New York."  (Walters Decl. Ex. M.)  On July 2, 2015, Lionsgate filed suit in the Central District of California, making Lanham Act, 15 U.S.C. § 1051 et seq. and state and common law unfair competition and dilution claims.

II.   DISCUSSION

Defendant argues that the Court should dismiss this action because 1) the action qualifies under exceptions to the first-filed rule because it is improperly

3

anticipatory and in violation of the parties' agreement during settlement discussions and 2) the DJA does not apply when an accused infringer has already ceased infringing activities. In the alternative, defendant argues that the Court should transfer the action to the Central District of California on the basis of <u>forum non conveniens</u>. As set forth below, the Court GRANTS defendant's motion to transfer venue on the basis that the action was plainly filed as a preemptive strike – and is there for an improper anticipatory filing. Intra-district transfer achieves the same end as dismissal in this case.

    A.    <u>First-Filed Rule Exceptions</u>

Generally, "[w]here there are two competing lawsuits, the first suit should have priority." <u>Employers Ins. of Wausau v. Fox Entm't Grp., Inc.</u>, 522 F.3d 271, 274–75 (2d Cir. 2008). There are, however, rare exceptions to the first-filed rule. <u>Id.</u> at 275. One of those exceptions is when the "first-filed lawsuit is an improper anticipatory declaratory judgment action . . . filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." <u>Id.</u> at 275–76; <u>see also</u> <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 579 F.2d 215, 219 (2d Cir. 1978) ("When the declaratory action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment . . . ."), <u>abrogated on other grounds by</u> <u>Pirone v. MacMillan, Inc.</u>, 894 F.2d 579 (2d Cir. 1990); <u>Akers Biosciences, Inc. v. Martin</u>, 2015 WL 1054971 at *2 (S.D.N.Y.) ("Special circumstances may exist either where a party improperly files an anticipatory declaratory judgment or where they are attempting

to forum shop.").¹  Furthermore, "where two actions are filed within a short span of time, as they were here, less deference may be afforded to the forum of the first filing."  Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc., 2012 WL 2065294 at *6 (S.D.N.Y. 2012).

There is no question that plaintiffs filed this action in anticipation of Lionsgate filing a suit against them.  "When a notice letter informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action."  J. Lyons & Co. v. Republic of Tea, Inc., 892 F. Supp. 486, 491 (S.D.N.Y. 1995); see also Cephalon, Inc. v. Travelers Companies, Inc., 935 F. Supp. 2d 609, 614 (S.D.N.Y. 2013).  Here, Lionsgate communicated its intention to file suit and the forum in which it would do so.  Lionsgate informed plaintiffs on June 3, 2015 that it would file suit in "the Central District of California" should settlement discussions proved unfruitful.  (Declaration of Whitney Walters-Sachs ("Walters Decl."), Ex. J.)  While Lionsgate did not provide a definite date by which it would

---

¹ That district courts have the power to dismiss declaratory judgment suits filed in anticipation of other coercive action is well-recognized.  See, e.g., Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc., 2012 WL 2065294 (S.D.N.Y. 2012) (collecting cases); see also Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 440 (S.D.N.Y. 2002) aff'd, 346 F.3d 357 (2d Cir. 2003) ("A rush to file first in anticipation of litigation in another tribunal, thereby enabling a potential defendant to choose the forum and governing law by which to adjudicate the dispute, and otherwise to interfere with or frustrate the other party's pursuit of claims elsewhere, is one of the equitable considerations a court may weigh in ruling on a request for declaratory relief."); Reliance Ins. Co. v. Bend'N Stretch, Inc., 935 F. Supp. 476, 478 (S.D.N.Y. 1996) ("If a court finds that a declaratory judgment action was brought in anticipation of the coercive suit for the purpose of gaining 'home field advantage,' the coercive suit is given precedence."); Great Am. Ins. Co. v. Houston Gen., 735 F. Supp. 581, 584 (S.D.N.Y. 1990) ("Even if the basic requirements for a declaratory judgment action are met, it is still within the discretion of the district court to decline to hear a declaratory judgment action, particularly when there is a pending proceeding in another court . . . that will resolve the controversies between the parties.").

file suit, it specified both intent to sue and the forum. See Cephalon, 935 F. Supp. 2d at 615 ("[A] date and forum are not fixed prerequisites, but mere indicia of notice."). The June 3, 2015 letter was a more concrete notice that followed two previous letters on April 2, 2015 and April 15, 2015, in which Lionsgate's counsel told plaintiffs that failure to sign the settlement offer letters within a week will mean that "we will advise Lionsgate to seek all remedies available to it for your unlawful acts." (Walters Decl. Exs. E, H.)

While Lionsgate's counsel could have been more careful with the wording of their earlier notice letters to provide even stronger indication of its intent to file suit, there is no question that plaintiffs understood them to mean that a lawsuit by Lionsgate was imminent. In fact, in its June 26, 2015 email to Lionsgate, plaintiffs expressly stated that they were filing the instant action because Lionsgate "repeatedly threatened litigation if [its] demands were not met." (Walters Decl. Ex. M.) The fact that the parties needed to explicitly agree not to file suit while settlement discussions were ongoing is strong evidence that plaintiffs had clear notice that should it reject Lionsgate's June 18, 2015 counteroffer, it would surely face a lawsuit in the Central District of California.[2]

"[T]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." Factors, 579 F.2d at 219 (internal citations and quotation marks omitted). This is particularly true where, as here, "a party is prepared to pursue a

---

[2] While in its June 8, 2015 email Lionsgate also asked plaintiffs to hold off on any declaratory judgment actions while settlement discussions were pending, (Walters Decl. Ex. K), any declaratory judgment action by plaintiffs in anticipation of a suit by Lionsgate would be improper in any event.

lawsuit, but first desires to attempt settlement discussions." Ontel Prods., Inc. v. Project Strategies, Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995).  Lionsgate "should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit."  Id.  Plaintiffs' early arrival at the courthouse steps will not be rewarded with procedural advantage and frustration of defendant's pursuit of the claims in California.  See Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F.Supp.2d 394, 440 (S.D.N.Y. 2002).

  B. Personal Jurisdiction

  Havas also argues that it is not subject to personal jurisdiction in California.  Based on the current record, this argument is insufficient to defeat transfer.  The Court assumes Havas will raise any personal jurisdiction defense in California if there remains a serious issue.  This Court's determination is based on its determination that it is more likely than not that Havas is subject to jurisdiction in California.

  Despite separate incorporation, it does appear that Havas Worldwide (New York) operates with a nationwide presence and may well be synergistically linked to the operations of the separate Californian offices.  The materials before the Court indicate that Havas Worldwide has five North American offices, one in New York and two in California (San Francisco and San Diego).  (Walters Supp. Decl., Ex. D.)  Despite the separate offices, the Havas enterprise is self-described as "one of the world's largest communications groups" and "offers a single business model . . . and

7

<u>integrated</u> structure that responds with a <u>single voice</u> to clients' new expectations." (Walters Suppl. Decl. Ex. A (emphasis added).)  It states that "100% of all communications disciplines [are] contained under <u>one roof</u>."  (<u>Id.</u>)  Various entities within the larger corporate structure partner with Californian businesses.  (<u>Id.</u>)  The New York office has Californian clients.  (<u>Id.</u> at Ex. B, C.)

It appears that Havas's business model indicates that its New York office's interactions with California are not "solely as a result of random, fortuitous, or attenuated contacts," but rather, it "established a continuing relationship" with Californian subsidiaries, business partners, and clients.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 487 (1985); see also <u>Benitez-Allende v. Alcan Aluminio do Brasil, S.A.</u>, 857 F.2d 26, 30 (1st Cir. 1988) ("If <u>International Shoe</u> stands for anything . . . it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings.").

Moreover, the specific contacts at issue in this case likely constitute sufficient minimal contacts for jurisdiction in Californian courts.  Havas (New York) created "over 100 different ads in various channels, including short online video, digital display, social media, television print, pages on the TD Ameritrade website and communications to TD Ameritrade clients." (Declaration of Nancy Wynne at ¶ 9.)  The campaign was "designed to appeal to individual retail investors." (Amended Compl. at ¶ 10.)  While there is no evidence to suggest that the campaign specifically targeted Californian customers, "it is easy to infer that . . . [this] national marketing campaign is intended to reach as large an audience as possible."

8

uBID v. GoDaddy Grp., 623 F.3d 421, 428 (7th Cir. 2010); see also Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548-49 (11th Cir. 1993) (finding that, although defendant's business partner was not an alter ego, the facts that "distribution system created by [their] alliance . . . contemplated a nationwide network" and that defendant "had a large hand in directing [the advertising] campaign" supported specific jurisdiction).

III.   CONCLUSION

For the reasons stated above, defendant's motion to transfer venue is GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 26 and to transfer this action to the Central District of California.

SO ORDERED.

Dated:   New York, New York
         September 29, 2015

_____
KATHERINE B. FORREST
United States District Judge

9